The SELMA, ROME AND DALTON RAIL ROAD COMPANY, plaintiff in error, *vs.* NATHANIEL P. HARBIN, defendant in error.

Where there was a suit pending against the Rome and Jacksonville Railroad Company, and pending the suit the said company and two other railroad companies agreed, under an authority from the Legislature, to consolidate their stock into a new company, the new company to be liable for the contracts and liabilities of the several companies thus consolidated, and the consolidation was consented to and approved by the Legislature, and a new name and charter granted, with the proviso that each of the companies was to continue liable for its liabilities incurred before the consolidation :

*Held,* That it was illegal to permit the plaintiff, in the suit pending, to take a judgment against the consolidated company in its new name, without proper steps to bring the new company as such before the Court, and a judgment so taken ought to be set aside.

Corporations. Judgments. Notice. Before Judge PARROTT. Whitfield Superior Court. October Term, 1869.

In January, 1866, Harbin sued out an attachment, returnable to April Term, 1866, against Hugh O'Hara and James Laman, under the firm name of O'Hara & Laman. On the first of February, 1866, it was levied by service of garnishment on "Edward White, the President of the Dalton and Jacksonville Railroad Company," a corporation of this State. The declaration, filed at April Term,

1866, was in the usual form, upon a written promise by said firm, binding the firm "to pay H. P. Harbin the sum of five thousand dollars when we collect from the Rome Railroad Company; that we have now entered suit against said Company. We bind ourselves to pay to the said Harbin, when collected, the money, with interest from this date, or bonds, whichever we may collect." At October Term, 1866, Laman pleaded the general issue, and that their suit against the Rome Railroad Company was still pending, and they had not collected the money or bonds.

On the 8th of August, 1866, the Alabama and Tennessee River Railroad Company, the Georgia and Alabama Railroad Company and the said The Dalton and Jacksonville Railroad Company, distinct corporations, agreed in writing, to "unite together so as to form one consolidated company, with all the rights, privileges and franchises belonging to either" of them in order to act as one company, and complete and own a railroad from Selma to Dalton, via Rome, Georgia. The fifth clause of said agreement was as follows: "All the debts, contracts and obligations and liabilities of each one of said parties to this contract and agreement are hereby assumed by the consolidated company formed under this contract." The agreement bound each to procure Legislative sanction of this agreement and consolidation. On the 13th of December, 1866, the General Assembly of Georgia passed the consolidating Act. The General Assembly of Alabama did so on the 8th of Feburary, 1867. These bills changed the names to "The Selma, Rome and Dalton Railroad Company."

On the 19th of June, 1867, Laman's counsel agreed to withdraw his pleas in said attachment upon Harbin's attorney agreeing that the cause should stand as if no pleas had ever been filed and would take a judgment binding nothing but the debts attached. The Court then ordered the pleas to be withdrawn, and the cause to proceed according to said agreement. In August adjourned Term, 1867, there was a verdict in favor of Harbin against O'Hara & Laman, and judgment was entered for the recovery, "to be levied of the

The Selma, Rome and Dalton R. R. Co. *vs.* Harbin.

property, effects and credits attached by summons of garnishment in the hands and possession of the garnishee in this case."

Harbin's counsel then took an order reciting that judgment had been entered on said attachment againt O'Hara & Laman, that service of garnishment "was served on the Dalton and Jacksonville Railroad Company" and "that said Dalton and Jacksonville Railroad Company, whose name has been (since the service of said summons) changed to that of The Selma, Rome and Dalton Railroad Company, has never filed any answer to said summons of garnishment," and ending that he recover of "said railroad company, but now known as The Selma, Rome and Dalton Railroad Company, the full amount of said judgment recovered on said attachment, to-wit," etc., and "that *fi. fa.* issue against said company for the said sums aforesaid." *Fi. fa.* was issued against The Selma, Rome and Dalton Railroad Company. At October Term, 1868, this consolidated company moved to set aside said *fi. fa.*, and vacate the judgment against it, because : *first*, It was never served ; *second*, because the order for judgment against it misrecited the facts, and this company had no notice of said order; *third*, because the whole proceedings, from the attachment to the end, are illegal and void, because no cause of action existed against it at the date of suing out said attachment. This motion came on for a hearing at October Term, 1869. The record of the proceedings aforesaid, and the contract of consolidation was submitted to the Court. It was admitted that the consolidated company had no notice of the judgment or proceedings against it, except such as might in law arise from the original service of garnishment, and that Laman's counsel withdrew said pleas because he ascertained he could not sustain them. The Court refused to set aside the *fi. fa.*, or vacate the judgment, and that is assigned as error.

WILLIAM H. DABNEY, PRINTUP & FOUCHE, for plaintiff in error.

C. D. McCUTCHEN, for defendant.

The Selma, Rome and Dalton R. R. Co. *vs.* Harbin.

McCay, J.

By the Act consenting to and approving the consolidation of these companies, it was expressly provided that each company should continue liable to third persons for all the obligations it had undertaken before the consolidation. This provision of the Act cannot be carried out if the Rome and Jacksonville Railroad has ceased to exist. For the purposes of enforcing its obligations upon it, those whom it owes may treat it as still existing and sue and recover judgment against it. And this is in fact nothing but what the Code had previously enacted: Sec. 1643.

That the new company has undertaken to pay the debts of each of the old companies, is only a new remedy, an additional security given to those who have claims against them. This is not, however, a part of the charter. It is simply a contract of the new company; a valid one, it is true, but still a contract which cannot be enforced against them, except as contracts are enforced against individuals. It only appears to us that there is such a contract by the production of the proof of it, introduced by the defendant in error, in reply reply to the motion. It is purely matter of evidence, and may be denied by the new company in the same way that any other contract it has made or may make, may be denied.

The original judgment on the garnishment was clearly taken against the new company, *on their contract* without any evidence that there was such a contract, nay, without any notice or any opportunity given to deny it. Nor is it any reply to the motion now made, to say, that though no evidence of the contract was produced, yet the judgment ought to stand because it is now produced.

Suppose a suit brought now against the new company? Could it be sustained without proof that the consolidated company had undertaken to pay the debts of the old companies? Is it liable for them under the Act of 1866, except by its contract?

We think this judgment was illegal. There was no no-

tice to the new company, and no proof that it was liable, or had ever made such a contract as it now appears was made. Judgment reversed.