JOHN W. CARSWELL, executor, plaintiff in error, *vs.* HENRY J. SCHLEY *et. al.*, defendants in error.

1. Before surrendering, upon a petition for removal into the federal court, its jurisdiction over a pending case, the state court must have before it a petition which, taken in connection with the record, sets out all the facts necessary to show a right of removal on the part of the petitioner.
2. Final decision by the superior court upon the sufficiency of the petition, is subject to review by the supreme court.
3. The citizenship of a defendant is not indicated with due certainty by simply describing him "of said county," meaning the county in which the suit is pending. Such a description only implies a a residence which subjects him to suit, and is consistent with citizenship in another state, or with alienage.
4. Where all the plaintiffs have the citizenship requisite to a right of removal, any one of them substantially interested can petition alone, under the act of March 3d, 1875, and have the whole suit transferred.
5. The suit being by husband and wife to recover property which belonged to the wife when the marriage took place, and not yet reduced to possession, the husband, (if the marriage was prior to 1866,) is concerned to assert and enforce his marital rights. He is a substantial party plaintiff, and not a mere nominal party.
6. Where discovery is waived, the bill demurred to at the first term the demurrer overruled at or after the second term, and that judgment is affirmed by the supreme court, the cause, whether the defendant has answered or not, stands for trial as soon as the *remittitur* is entered in the superior court. The term at which it could be first tried, is the term at which the *remittitur* is entered. After that term, a petition for removal, under the act of March 3, 1875, comes too late.

United States Courts. Removal of causes. Judgments. Practice in the Supreme Court. Venue. Pleadings. Husband and wife. Parties. Practice in the Superior Court. Before Judge GIBSON. Burke Superior Court. October Adjourned Term, 1876.

Reported in the opinion.

A. M. RODGERS; JOHN J. JONES, for plaintiff in error.

HOOK & WEBB; W. W. MONTGOMERY; E. F. LAWSON, for defendants.

BLECKLEY, Judge.

To May term, 1874, of Burke superior court, Schley and wife and Miller brought their bill in equity, against Carswell as executor of Miller, the deceased father of Mrs. Schley, and of Miller, the complainant. Discovery was expressly waived. The matter in controversy exceeded five hundred dollars, exclusive of costs. The object of the suit was to recover certain property, and the hire and profits thereof, claimed by Mrs. Schley and her brother under an ante-nuptial settlement into which their parents entered, in 1827, in contemplation of marriage. It was alleged that their deceased father continued to hold the property after their mother's death, and until his own death, and that he died in possession of the same, or chargeable therewith, etc. At the appearance term, the defendant demurred to the bill for the want of equity, and for other reasons. The demurrer was overruled on the 9th of March, 1875, and that judgment was affirmed in the supreme court on the 12th of May, 1876. The case is reported in *56th Ga.*, 101. The *remittitur* reached Burke superior court during the May term, 1876, and was made the judgment of that court on the 24th of May. Subsequently, in the same term, an order was passed directing that an answer be filed sixty days before the next term, and that the cause stand for trial at said next term. On the 9th of August, 1876, the complainants amended their bill, accommodating its tenor more exactly to the view of their rights expressed by the supreme court, adding specific allegations touching hire, etc., and introducing certain charges as to the conduct of the executor in respect to a part of his administration. The defendant's answer to the bill was filed on the 12th of September, 1876. The fall term of Burke superior court commenced in the following October, and was adjourned over to November. During the sitting of the court in November, the complainant, Schley, made and filed his petition for a removal of the cause into the circuit court of the United States, and there-

with filed his bond, with good and sufficient surety, conditioned as required by the act of congress of March 3rd, 1875. The court accepted the petition and bond, and passed an order that the cause be removed. The defendant excepted; and this action of the court on the application for removal is alleged to be erroneous.

1. When the case was called here for argument, counsel for Schley moved to dismiss the writ of error upon the ground that whether removal was effected or not, was a question for decision by the circuit court of the United States, upon a motion to remand, and that this court could not entertain it. In Amory *vs.* Amory, lately decided by the supreme court of the United States, (16 Albany Law Journal, 392,) the right of the state court to look into the petition for removal, and compare it with the statute, was distinctly recognized. Such a power in the state tribunal must exist of necessity. When the court in which a cause is pending is called on to yield its jurisdiction on statutory conditions, said to appear on the face of certain documents presented to it, it must inspect the documents and determine whether the conditions appear or not. How else is it to know whether to retain the case or part with it? whether to grant the application or refuse it? whether to treat the case as still pending or out of court? If a court is to know the situation of its own business, and how to order its proceedings in reference thereto, it cannot decline the duty of deciding whether a given case is a part of its business or not, when the question is properly made before it. The scheme of removal ordained by the act of congress, is open and public. It is by petition. It contemplates a taking with leave, and not furtively by a sort of statutory larceny. The state court is to know of the proceedings for removal, and to see that they are such as the act prescribes. When they conform to the act, the court has no right or power to retain the case; and when they fail to conform in any essential particular, it has no right or power to send the case away or order it removed. Until there is a sufficient petition there can be no transfer; and

whether or not the petition, reading it in connection with the record, is sufficient, can and ought to be decided, in the first instance, by the court whose duty it is to accept it. The acceptance or rejection of the petition involves a decision upon its sufficiency.

2. The supreme court of this state is a court for the trial and correction of errors from the superior courts, and city courts. Code, § 5086. "Either party, in any civil cause, . . in the superior courts of this state, may except to any . . judgment, or decision, or decree, of such court, or of the judge thereof, in any matter heard at chambers." *Ib.*, § 4251. If the superior court could, and did, make a decision on the petition for removal, we entertain no doubt that it is subject to review here, on writ of error. We do not know of any class of decisions which the superior court has power to make, that cannot be reviewed here. In exercising the power of revision, the supreme court acts solely for the purpose of guiding the superior court of Burke county, as a state tribunal, in the performance of its functions. The laws of the United States are the laws of Georgia, and are to be administered by her courts no less faithfully than her own local enactments. All acts of congress that speak constitutionally, should be obeyed without hesitation or reluctance. Not only are they law for us, but they are a part of our supreme law, and must be respected accordingly. As ultimate questions, what they mean, and how they are to be administered, are for decision by the federal judiciary; but this does not relieve the state tribunals from taking their due part in construction and administration. Conflicting constructions need not be anticipated. On the contrary, the presumption is, that statutes which are common to two governments, will be understood by the tribunals of both, to utter the same voice. The motion to dismiss the writ of error is overruled.

3. We now look into the petition. It alleges that the complainants in the bill are all citizens of Texas; but it contains no express averment as to the citizenship of Cars-

well, the defendant. Neither does the bill itself, nor any other part of the record. In the prayer of the bill for subpœna, he is described as "of said county of Burke." In the petition for removal, the description is substantially the same. Such terms are insufficient to ground jurisdiction upon, where citizenship is a requisite condition. See Brown *vs.* Keene, 8 Peters, 112, and the cases therein cited. Also, see 1 Brock., 389. As reported in 16 Albany Law Journal, 392, Chief Justice Waite, speaking for the supreme court of the United States, says, "the right of removal is statutory. Before a party can avail himself of it, he must show upon the record that his is a case which comes within the provisions of the statute. His petition for removal, when filed, becomes a part of the record in the cause. It should state facts which, taken in connection with such as already appear, entitle him to the transfer. If he fails in this, he has not, in law, shown to the court that it cannot 'proceed further with the cause.' Having once acquired jurisdiction, the court may proceed until it is judicially informed that its power over the cause has been suspended." The petition does affirm that the "controversy is wholly between citizens of different states, and can be fully determined as between them by the circuit court of the United States;" but this is a conclusion, and not a direct, issuable fact as to citizenship. To arrive at the defendant's citizenship from this, you must treat it as involved by implication; but being a necessary jurisdictional fact, it should appear by express averment, and not be left to be inferred argumentatively. Why was the citizenship of the complainants made known, and that of the defendant not declared? If a description of the controversy as being between citizens of different states, would suffice in regard to the defendant's citizenship, why would it not do so in regard to that of the complainants also?

4. The objection that the petition for removal was by one only of the three complainants in the bill, is not sustainable. The act of congress provides for one among several qualified

plaintiffs petitioning alone, and so it has been construed by some of the courts of the United States.—Board of County Commissioners *vs.* Kansas Pacific Railway Company, 5th Central Law Journal, 102.

5. That Schley, the petitioner, is substantially interested in the matter of the bill, if his marriage was prior to 1866, is settled by a previous decision of this court.—57 *Ga.*, 412. We cannot ascertain from the petition, or the pleadings, when he was married, but the answer seems to admit that his wife's rights had vested in him as husband, and to deny that she had any substantial interest of her own to render her a necessary party to the bill. At all events, Schley is asserting an interest in himself, and it does not affirmatively appear that he is without interest. That is enough on that element of the case.

6. We think, however, that the petition, besides being insufficient in not disclosing the citizenship of the defendant, came too late. Discovery was expressly waived in the bill, as provided for in section 3101 of the Code. The defendant was not bound to answer. The case in 35 *Ga.*, 114, is no *decision* to the contrary. If the defendant had desired to file an answer as pleading, he had the privilege of doing so when he demurred, (Code, §4191,) and for thirty days after the first term, (*Ib.*, §4194,) which was May term, 1874. He might, also, have obtained further time for answering, but this he did not do until after the cause had become subject to be tried without an answer. Provision is made for compelling an answer where discovery is sought, but not where it has been disclaimed.—Code, §4208. Section 4199 of the Code declares that "No replication shall be filed, and no order setting down the case for trial; but the parties may commence to take testimony as soon as the bill is filed." Section 4205 declares that "The trial term of all equity causes shall be the second term after service has been perfected on all the parties." Section 3527, (construed in 54 *Ga.*, 361,) declares that "When any cause shall be sent back to the superior court by the supreme court, the same

shall be in order for trial at the first term of the said superior court next after the session of the supreme court." The demurrer to the bill was overruled by the superior court on the 9th of March, 1875, a few days after the act of congress was passed. That judgment was affirmed in the supreme court on the 12th of May, 1876, and the judgment of affirmance was made the judgment of Burke superior court at its May term of that year. As soon as that was done, the bill was ripe for trial, and the complainants might, by proving their case, have obtained a decree. Had they done so, there would have been neither error nor irregularity in the proceeding. The term at which the cause could first be tried had been reached, and that was the term at which any petition for removal, under the act of March 3d, 1875, had to be filed. See the act in United States Statutes at large, p. 470. Instead of trying the case as it then existed, the parties, for some reason satisfactory to themselves, allowed the term to go over, an order being taken for a trial at the next term, and for the defendant, in the meantime, to answer. The complainants then amended their bill; but, while all this prevented the case from being tried in fact, it did not change the term at which it could have been first tried. The act of congress fixes upon that term as the latest period at which a petition for removal can be filed. And there is good reason for it. Preparation for trial involves expense. Witnesses are to attend court if they reside within the county. If a party means to change his forum, until the regular trial term of his case arrives is long enough for him to deliberate. The act of congress looks to terms, and nothing else—not to such incidental and contingent matters as continuances, amendments, and the like. When is the first term for trial? At what term could a trial be first had? That is the sole question, and our law enables us to determine it with absolute certainty. As the petition was delayed till October term, 1876, when it should have been filed at or before the preceding May term, the superior court

should have declined to accept it, and should have refused the order of removal.

Throughout this opinion, we have treated the case as if Carswell, the executor, had been sole defendant from the beginning. When the cross bill was dismissed, the original bill stood as if no cross bill had been filed. The great fact is, that so soon as the judgment of this court was entered in the superior court, a decree could, without either error or irregularity, have been rendered for the complainants, if they had then, by evidence, established the averments of the bill. And their bill, as it then existed, embraced the substance of the whole matter in dispute. The petition for removal concedes that since the demurrer was finally decided, there has been no controversy in which the co-defendants of Carswell had, or have, any interest. To prevent a confusion which would be distressing to courts, and detrimental to parties, variable and contingent elements should have the least possible influence in prolonging the time within which the transfer of cases may be demanded. Where, as in Georgia, there is regular system in fixing the appearance term and the trial term of cases, by general law, and not by special or particular orders, the matter will always be plain so long as the system is kept in sight and made the basis of decision. But to disregard the system, and undertake to follow each case through the accidental forms that it may assume at successive periods, would be to exchange certainty for uncertainty. Nothing in practice is more to be deprecated than the adoption of a doubtful standard by which to determine the boundary line between state jurisdiction and federal jurisdiction.

Cited for plaintiff in error, Dillon on Removal, 57, 58, 59, notes; Act of March 3, 1875; Code, §§ 1754, 1774. For defendant in error, Southern Law Review, July, 1876, p. 318; 19 Wall, 214, 223; 14 Howard, 23; 15 *Ib*. 198; 16 Peters, 97; 20 Wall., 454.

Judgment reversed.