THE STATE OF GEORGIA *vs.* THE ATLANTIC AND GULF RAIL‑ ROAD COMPANY.

[This case was argued at the last term and decision reserved.]

1. The Savannah and Albany Railroad Company and the Atlantic and Gulf Railroad Company having been chartered prior to the adop-

tion of the Code, the former in 1847 for thirty years only, the latter in 1856 without limit as to duration, and the consolidation of the two, upon such terms and conditions as might be agreed upon by their directors and ratified by a majority of their stockholders, having been authorized by an act of the general assembly passed in 1863, (after the Code went into effect) which act declared that "the said railroad companies, when so consolidated, shall be known as "The Atlantic and Gulf Railroad Company;" that nothing herein contained shall relieve or discharge either of said companies from any contract heretofore entered into by either, but this company shall be liable on the same; that the stockholders of said consolidated railroad companies, by such corporate name and in such corporate capacity, are made capable in law to have, purchase and enjoy such real and personal estate, goods and effects, as may be necessary and proper to carry out the objects herein specified, and to secure the full enjoyment of all the rights herein and hereby granted, and by said name to sue and be sued, plead and be impleaded in any court of competent jurisdiction, to have and use a common seal, and the same to alter at pleasure, and to make, ordain and establish such rules, by-laws and regulations as shall seem necessary and convenient for the government and protection of said corporation, the same not being contrary to the constitution and laws of this state, and generally to do and perform and execute all such acts, matters and things as may appertain to corporations of like character ; and that the several immunities, franchises and privileges granted to the said Savannah, Albany and Gulf Railroad Company, and the Atlantic and Gulf Railroad Company, by their original charters and the amendments thereof, and the liabilities therein imposed, shall continue in force, except so far as they may be inconsistent with this act of consolidation:"

*Held*, that when the consolidation took place in pursuance of the act of 1863, a new corporate being came into existence, and whatever of the property of the former companies passed to it, as well as whatever property it subsequently acquired, became subject to the general taxing power of the legislature, irrespective of any concession or limit of the power which the charters of the former companies contained, there being in the new charter no express negative upon the right of the state to "withdraw the franchise," or to "change, modify or destroy" the corporation.

2. The case of the Central R. R. & B. Co., *vs*. The State, 54 *Ga.*, 401, until adjudged to be erroneous, was sufficient to rule the present case; but since the reversal of the judgment in that case by the supreme court of the United States, a closer comparison of the legislation involved in the two cases becomes important; and, on such comparison, it is apparent that the legislative purpose to create a new corporation is not, in this instance, doubtful; whereas, in the

former, as determined by the court of last resort (2 Otto, 143), the purpose did not exist.

Constitutional law. Corperations. Railroads. Tax. Before Judge PEEPLES. Fulton Superior Court. October Term, 1876.

Reported in the opinion.

R. N. ELY, attorney general; ROBERT TOOMBS, for plaintiff in error.

HARTRIDGE & CHISHOLM; ROBERT FALLIGANT, for defendant.

BLECKLEY, Judge.

The Code of Georgia went into effect on the first of January, 1863. In section 1651, it declares that "Persons are either natural or artificial. The latter are the creatures of the law, and except so far as the law *forbids* it, subject to be changed, modified or destroyed, at the will of their creator; they are called corporations."

And in section 1682, it declares that, "In all cases of private charters hereafter granted, the state reserves the right to withdraw the franchise, unless such right is expressly negatived in the charter." As construed by this court in 54 *Ga.*, 401, these provisions reserve to the state the power to modify, as well as the power to destroy—the power to maim, so to speak, as well as the power to kill; and a corporation preferring death to mutilation, has the resource of suicide; that is, it may surrender its charter. "A corporation may be dissolved by a voluntary surrender of its franchises to the state." Code, §1686. "Private corporations heretofore created without the reservation of the right of dissolution, and where individual rights have become vested, are not subject to dissolution at the will of the state." Code, §1683. In the year 1847, the Savannah and Albany Railroad Company was chartered for the term of thirty years.

Its name was subsequently changed to "The Savannah, Albany and Gulf Railroad Company." In the year 1856, the Atlantic and Gulf Railroad Company was chartered without limit as to duration. Each company organized, constructed its road prior to 1860, acquired property, contracted debts, etc. In neither charter was any limitation or restriction upon the power of taxation, further than resulted from the following provisions, taken in connection with the charters of other companies: The provision in the charter of 1847 was as follows: "They are hereby invested with all the rights, privileges and immunities which by the laws of Georgia are held and enjoyed by any other incorporated railroad company or companies, subject to the restrictions connected with and necessarily consequent upon such rights, privileges and immunities, for the purposes hereinafter specified." The provision in the charter of 1856 was as follows: "And all the privileges, immunities and exemptions granted to the Central Railroad and Banking Company, and the Georgia Railroad and Banking Company, or either of them, by the acts incorporating said companies, and the several acts amendatory thereof, are hereby granted to the said Atlantic and Gulf Railroad Company, so far as the same can be made applicable to the said Atlantic and Gulf Railroad Company." The charters of the Central Railroad and Banking Company and of the Georgia Railroad and Banking Company, were both of older date than the above mentioned charter of 1847, and in each of them taxation was limited to one-half of one per cent. on the net annual income of the company. Perhaps there were other companies as favorably situated in respect to taxation, but none were more so. There was no general law of the state fixing any limit whatever to the taxing power. In April, 1863, after the Code took effect, an act was passed by the general assembly authorizing the Savannah, Albany and Gulf Railroad Company and the Atlantic and Gulf Railroad Company to consolidate their stocks upon such terms and conditions as might be agreed upon by their directors

and ratified by a majority of their stockholders, and declaring that "The said railroad companies, when so consolidated, shall be known as the 'Atlantic and Gulf Railroad Company"; that nothing herein contained shall relieve or discharge either of said companies from any contract heretofore entered into by either, but this company should be liable on the same; that the stockholders of said railroad companies, by such corporate name and in such corporate capacity, are made capable in law to have, purchase and enjoy such real and personal estate, goods and effects, as may be necessary and proper to carry out the objects herein specified, and to secure the full enjoyment of all the rights herein and hereby granted; and by said name to sue and be sued, and plead and be impleaded in any court of competent jurisdiction, to have and use a common seal, and the same to alter at pleasure, and to make, ordain and establish such rules, by-laws and regulations as shall seem necessary and convenient for the government and protection of said corporation, the same not being contrary to the constitution and laws of this state, and generally to do and perform and execute all such acts, matters and things as may pertain to corporations of like character; and that the several immunities, franchises and privileges granted to the said Savannah, Albany and Gulf Railroad Company, and the Atlantic and Gulf Railroad Company, by their original charters and the amendments thereof, and the liabilities therein imposed, shall continue in force, except so far as they may be inconsistent with this act of consolidation," etc. See acts of 1862-3, p.233. The consolidation took place in pursuance of the act, and was completed in June, 1863. In settling the terms of consolidation, there was no requirement that new scrip should be issued. Each stockholder continued to hold his original scrip. Both companies had the same president, treasurer and other officers, and all of them continued after consolidation. Previous to 1874, the state collected no tax from the consolidated company or either of the original companies. They have never made or paid a dividend, and

have always claimed that they never made a net income. In February, 1874, the general assembly passed an act entitled "An act to amend the tax laws of this state, so far as the same relate to railroad companies, and to define the liabilities of such companies to taxation, and to repeal so much of the charters of such companies respectively as may conflict with the provisions of this act." The act required from each company an annual return to the comptroller general of the value of its property, without deducting indebtedness, each class or species of property to be separately named and valued, to be taxed as other property of the people of the state. It also required the railroad companies to pay the tax assessed upon them, and it repealed conflicting laws. Provision was made for contesting the tax by affidavit of illegality. In pursuance of the act, an assessment was made upon the Atlantic and Gulf Railroad Company, and an affidavit of illegality being interposed, the same was overruled. That judgment was affirmed by the supreme court, 55 *Ga.*, 312. The next year another assessment was made, and a like affidavit of illegality was sustained, the supreme court of the United States having in the meantime decided the Central Railroad and Banking Company *vs.* Georgia, reported in 92 U. S., 665. The present writ of error is brought by the state to reverse the judgment of the superior court sustaining this latter affidavit of illegality. The tax now in question is imposed upon the railroad and appurtenances in which the capital of the two original companies was invested, and the amount far exceeds one-half of one per centum on the net annual income. The general question for decision is, whether the act of 1874 violates the constitution of the United States by impairing the obligation of the contract between the state and the consolidated company. The determination of that question depends, however, on two others, the first of which is, whether the Atlantic and Gulf Railroad Company, as now existing, was chartered by the act of April, 1863; and the second is, whether (if it was) the act itself contains

any express negative upon the right of the state to repeal or modify the charter.

If the consolidated company had borne a different name from that of either of the original companies, it would probably have been recognized at once as a new creature; but bearing the same name as one of them, a sort of puzzle is presented. Have we the same old corporation, or a new one with the old name? The name is suggestive, but not decisive; for, to be a person, a name is not enough, there must be life. Though corporate life is a pure fiction, as is the whole corporate entity, yet the law in its powerful imagination (for the law is a great poet) intensifies the fiction into reality. In contemplation of law, life is no less essential to artificial persons than to natural persons. Bodies corporate are not dead bodies, but living persons. When they die they are annihilated. Among artificial persons there is no resurrection from the dead; so that a new life always supposes a new person. In endeavoring to establish the identity of a corporation, the real problem, then, is one concerning life, not a mere question about names. It is certain that before consolidation there were two corporate lives, and that since, there has been but one. The possible modes of this numerical change are only three; in one of them it must have taken place. I give to each of them such appellation as seems to me appropriate, without being sure that it is the best that could be chosen. First, by merger, or the extinction of one corporation, and the absorption of its stock, assets, etc., by the other. Examples of this mode may be seen in 30 Penn., 46; 15 Wallace, 460, and 92 U. S., 665. Second, by coalescence, or the vital union of the two corporations, neither being extinguished, but their existence becoming joint and ceasing to be several. There may be examples of this mode, but I am unable now to cite any. Third, by vital succession, or the extinction of both original corporations and the creation of a new one. Examples of this mode are furnished in 10 Howard, 376; 16 Ind., 172; 1 Wall., 40; 18 *Ib.*, 206; 26 Ohio, 86, and 95, U. S.,

319. Merger may be compared to extinguishing one of two lighted torches, and combining its materials with the other. Coalescence may be compared to putting two burning torches together, and leaving them to shine as a single light. Succession may be compared to extinguishing both torches in the moment of uniting them, and instantly relighting them, as one, with new fire. A case of vital succession, or new creation, occurs whenever the consolidated company is *incorporated*, no matter whether the powers conferred be those which were enjoyed by the prior companies under their respective charters, or powers altogether different. When the new corporate being comes into existence, it is without capacity to take by mere transmission from its predecessors; it can take only by grant, and the instrument of grant is *its* charter. What now constitutes a part of its charter may have been heretofore the charters of other companies, but that will not carry the date of its charter back to a period anterior to its own creation. It is impossible that the charter of a corporation can be older than the act of incorporation to which it owes its existence. It cannot be doubted that the act of April, 1863, is an act of incorporation. It declares that the " stockholders of said railroad companies, by such corporate name and in such corporate capacity, are made capable in law to have, purchase and enjoy such real and personal estate, goods and effects, as may be necessary and proper to carry out the objects herein specified, and to secure the full enjoyment of all the rights herein and hereby granted; and by said name to sue and be sued, and plead and be impleaded, in any court of competent jurisdiction; to have and use a common seal, and the same to alter at pleasure, and to make, ordain and establish such rules, by-laws and regulations as shall seem necessary and convenient for the government and protection of said corporation," etc. It was competent for the legislature to have provided for consolidation by merger or by coalescence, but the method adopted was neither, but the very different method of vital succession—the creation of

new corporate life. The consolidation was accomplished in that mode, if it was accomplished at all, and the original companies voluntarily went out of existence.

. It is not necessary to consider here any qualified existence for the purpose of responding to the claims of creditors. 40 *Ga.*, 706. The act of April, 1863, declares "that nothing herein contained shall relieve or discharge either of said companies from any contract heretofore entered into by either, but *this* company shall be liable on the same." Another provision of the act is, "that the several immunities, franchises and privileges granted to the said Savannah, Albany and Gulf Railroad Company, and the Atlantic and Gulf Railroad Company, by their original charters and the amendments thereof, and the liabilities therein imposed, shall continue in force, except so far as they may be inconsistent with this act of consolidation." The meaning of this latter provision is, that the immunities, franchises and privileges referred to shall be vested in the new company, and that upon it shall rest the same liabilies as were imposed upon the original companies by their respective charters and the amendments thereto. In other words, the charters of the original companies and the amendments thereto, are made the measure of the charter immunities, franchises, privileges and liabilities of the consolidated company. Thus the Atlantic and Gulf Railroad Company of 1863 had granted to it whatever was granted to the Atlantic and Gulf Railroad Company of 1856, and whatever was granted to the Savannah, Albany and Gulf Railroad Company. Let it be conceded that one of the immunities so granted in 1863 to the present company was exemption from taxation beyond one-half of one per cent. on net income, what is the result? The grant was qualified by the general provisions of the Code, and could be withdrawn unless the right to withdraw, was denied by an express negative in the act making the grant. It is obvious that no such denial is contained in the act. There are no negative words whatever, the words being "that the several immunities, franchises and privi-

leges . . . shall continue in force, except so far as they may be inconsistent with this act of consolidation." Continue in force how long? The Code furnishes the answer: until it shall be the will of the state to change, modify or destroy the corporation, or withdraw the franchise. The will of the state to modify the corporation, and withdraw the special franchise in respect to taxation, was expressed by the act of 1874, imposing the tax now in question.

2. As was decided by this court in 55 *Ga.*, 312, the case of the *Central Railroad and Banking Company vs. The State*, 54 *Ib.*, 401, was sufficient to rule the question involved in the present case; but the supreme court of the United States having held that in the act of the general assembly construed in 54 *Ga.*, 401, there was no purpose to create a new corporation, the decision now made is put on another ground, a ground that is tenable without stinting the submission that is due to that tribunal on a question of supreme law. We concede that this court erred in the decision reported in 54 *Ga.*, 401; but believe there was no error in the judgment which was improperly rested on that decision in 55 *Ib.*, 312, and we thus see our way consistently to the judgment which we now render. The reason given for the decision in 55 *Ga.*, 312, was incorrect, but the decision itself was free from error, and the superior court should have conformed to it. In the case of the Central Railroad and Banking Company, there was, as determined by the supreme court of the United States, no purpose to create a new corporation after the Code went into effect; whereas, in the present case, the purpose cannot be doubtful.

Judgment reversed.