ANGIER *et al. vs.* THE EAST TENNESSEE, VIRGINIA AND GEORGIA RAILROAD *et al.*

1. Where a judge of the superior court approved a bond tendered for the purpose of removing a cause to the circuit court of the United States, and thereby virtually gave judgment for the removal, this was a final order disposing of the case in the superior court, and is reviewable in this court.

2. To divest the courts of this state of jurisdiction, a petition must be filed, which, taken in connection with the record, makes a case for removal; and upon this petition and record the state court must pass.

3. Where the charter of a Georgia railroad corporation conferred the power to sell its road, charter, franchises and privileges to any person or corporation, within or without the state, and a foreign railroad company purchased the rights, titles, properties, franchises, powers and privileges of every description of such Georgia corporation, and "assumed all its debts or obligations of every sort," the two becoming merged and consolidated under the name of the foreign corporation, under its charter and the charter granted by the state of Georgia, the purchaser became a domestic corporation, occupying the place of the vendor.

(*a.*) Such facts appearing in the record, the purchaser was not entitled to remove a cause against it from the state to the federal court, on the ground that it was a foreign corporation.

(*b.*) The permission to purchase the domestic railroad company, with all its rights and franchises, was an original and direct grant by the legislature to the appointee of that company, and that appointee or purchaser, as soon as made, became *eo instanti* the offspring of the legislative will of this state; nor does it matter that the purchaser was not called by name. It was not a mere license to carry out a power already potential, nor did it take the place of the vendee company by mere implication, but by direct grant of power.

4. Although a corporation of New York was joined with the East Tennessee, Virginia and Georgia Railroad Company (the purchaser) in this suit as a defendant, no decree could be made in regard to it independently of the railroad company; and therefore that corporation cannot remove the case to the circuit court.

April 2, 1885.

Railroads.   Corporations.   Charters.   License.   Laws. States.   Vendor and Purchaser.   Before Judge ESTES. Fulton County   At Chambers.   January 12, 1885.

Angier *et al.* filed a creditors' bill against the East Tennessee, Virginia and Georgia Railroad and the Central Trust Company, of New York, the latter holding a deed of trust to secure the holders of mortgage bonds. The bill alleged that the railroad was a Georgia corporation, and specifically alleged, in brief, as follows: The road from Rome to Macon was built by the Cincinnati and Georgia Railroad, and the road from Macon to Brunswick was purchased by it. The Cincinnati and Georgia Railroad then sold and transferred all its. " rights, titles, properties, franchises, powers and privileges of every description " to the East Tennessee, Virginia and Georgia Railroad, then a Tennessee corporation, and the latter assumed all of the debts, obligations and burdens, and the two became merged under the name of the East Tennessee, Virginia and Georgia Railroad, and the separate existences of the Cincinnati and Georgia Railroad and the Macon and Brunswick Railroad ceased.

The answer denied generally that the East Tennessee, Virginia and Georgia Railroad was a Georgia corporation, but did not deny the sales just above stated.

The judge of the circuit being absent, the judge of the Northeastern Circuit presided at the hearing of the application for a temporary injunction and receiver, at chambers.

On the hearing, a petition and bond for removal of the case to the United States Circuit Court were presented, alleging that the East Tennessee, Virginia and Georgia Railroad was a citizen of Tennessee, and the other defendant of New York. The presiding judge approved the bond and thereby granted the removal. Complainants excepted.

The charter of the Cincinnati and Georgia Railroad Company will be found in the Acts of 1880–1, p. 250 *et seq.*

VAN EPPS & CALHOUN; KING & SPALDING; E. A. ANGIER.; HOKE SMITH, for the plaintiffs in error, cited 60 *Ga.*, 423; 59 *Id.*, 17; 68 *Id.*, 394; 100 U. S., 457; 3 Woods, 128; Acts 1880–1, p. 250, section 2; 14 Minn., 303; 43 Mich., 354; 12

Angier *et al. vs.* The East Tennessee, Virginia and Georgia Railroad *et al.*

Wall., 65, 82; 1 *Id.*, 40; 60 *Ga.*, 274; 108 U. S., 436; Mor. Corps., §§536, 539; 65 Penn. St., 205; 67 N. Y., 371; Mor. Corps, §§500, 502, 508, 525; 104 U. S., 5; 1 Black, 287; 13 Wall., 270; 96 U. S., 450; 107 *Id.*, 584; 109 *Id.*, 104; 32 Grat., 394; 1 W. Va., 308; 3 *Id.*, 319.

BACON & RUTHERFORD; HOPKINS & GLENN; HENRY B. TOMPKINS, for defendants, cited 59 *Ga.*, 263, 17; 60 *Id.*, 423; So. L. Rev., N. S., vol. 2, p. 282; *Id.*, vol. 3, p. 3; Dill. Rem. Caus., 91; 103 U. S., 490; 19 U. S. Stats. at Large, sec. 5, p. 472; 6 Wall., 253; 13 Pet., 519; Acts 1847, p. 171; 14 *Ga.*, 336; Acts 1880-1, p. 251; 18 Wall., 670; 9 *Ga.*, 517; 8 *Id.*, 23; 7 *Id.*, 221; 3 *Id.*, 31; 60 *Id.*, 269; 12 Wall. —; 13 *Id.*, 270; 10 Otto, 55; 14 *Id.*, 5; 105 U. S., 537; 1 Blatchf., 628; 9 Am. and Eng. R. R. Cas., 201; 93 U. S., 217; 53 Ala., 237; 22 O. St., 428; 2 Dur., 17; 3 Tenn. Ch., 602; 21 Law Rep., 138; 3 Otto, 217; 13 *Id.*, 205.

JACKSON, Chief Justice.

This record makes the question of the removal of a cause in the superior court of Fulton county ·to the circuit court of the United States for the northern district of Georgia. The judge of the superior court of the Atlanta circuit, which embraces this county, being absent, the judge of the Northeastern Circuit approved the removal bond, and thereby virtually gave judgment for the removal in vacation.

Pretermitting the power of a judge to pass such order by this entry of approval, under the laws of this state, which distinguishes between the powers of court and those of a judge not sitting in term, inasmuch as the judge was sitting as chancellor on the subject of appointing a receiver, the legality of the removal depends on the question whether the East Tennessee, Virginia and Georgia Railroad Company be a domestic Georgia corporation.

1. It is not an open question in this court that the action or judgment of the superior court, such as was had

or rendered in this case, is reviewable by this court. It is an order, and a final order, disposing of the case forever in the superior court, and therefore reviewable here. 59 *Ga.*, 17; 60 *Id.*, 423; 68 *Id.*, 394.

2. To divest the courts of this state of jurisdiction, a petition must be filed, which, taken in connection with the record, makes a case for removal. 100 U. S. R., 457. Upon this petition and record, the state court must pass. 59 *Ga.*, 17; 3 Woods, 128.

3. The record shows that the East Tennessee, Virginia and Georgia Railroad Company, under the charter powers of the Cincinnati and Georgia Railroad Company, purchased from it "its rights, titles, properties, franchises, powers and privileges of every description," and " assumed all of its debts, obligations and burdens of every sort," and that these companies " became merged and consolidated under the name of the East Tennessee, Virginia and Georgia Railroad Company, under its Tennessee charter and under the charter granted by the state of Georgia to the Cincinnati and Georgia Railroad Company."

The charter of the last named company granted the widest powers to it. Acts of 1880–1, p. 250.

By the second section of that act of incorporation, on page 251, it is enacted that " said corporation shall also have the right and power to purchase from or sell to any other corporation, person or company, whether within or without this state, * * * any railroad, including its charter, franchises, rights and privileges, or any of its or their branches or extensions, upon such terms as may be agreed upon by the board of directors of the corporations, respectively, and the owner of said railroad charter, franchises, rights or privileges, which in each case is also hereby authorized to sell and convey, or lease the same or any part thereof. * * * " Where asterisks are used, provisos, not affecting the grant of power in its application to this case, are omitted in the above extract from the act.

By the twelfth section, it is enacted that " the principal

office of said corporation shall be in Atlanta," and then in that section is added the power to have branch offices elsewhere.

By section eighteenth, power to forfeit the charter is reserved upon certain contingencies, showing that the state, in granting these extraordinary powers, had her mind intent upon keeping absolute control over this Cincinnati and Georgia Railroad Company, no matter into whose hands it might fall, and to domesticate whomsoever it made by sale its owner. And the omitted provisos in the extract from section 2, *supra*, tend in the same direction, to-wit, to foster competition and prevent the road from being owned or dominated by any power which might throttle the interest of the people of Georgia therein under her constitution and laws.

The power granted to the Cincinnati and Georgia Company to sell "its charter, franchises, rights and privileges," is so broad as to embrace its life, its all; and when it did, under this power, sell "its rights, franchises, powers and privileges of every description" to the East Tennessee, Virginia and Georgia Company, and the latter assumed all "its debts, obligations and burdens of every sort," it does appear to have sold itself, and nothing was left of the corporate being Georgia had made, but its life passed into its buyer, and the purchaser became the Georgia corporation in its stead.

That the words used in this charter and this sale under it have the effect to make the purchaser a domestic corporation in Georgia and of Georgia has been decided by the courts. 1 Wallace, 40; 12 *Id.*, 65, 82; 60 *Ga.*, 274; 108 U. S. R., 436; 14 Minn., 303; 43 Mich., 354.

It seems to us that the case cited from the 108th U. S. covers and concludes the point made here. There the Boston, Hartford and Erie Railroad Company was originally created a corporation by Connecticut. By authority of its charter, it purchased the franchise and railroad of the Hartford, Providence and Fishkill Railroad Company,

which was a consolidated corporation deriving its existence from Connecticut and Rhode Island both. Rhode Island afterwards ratified the sale to the Boston, Hartford and Erie Company, so far as it was situated in that state, enacting that the Boston, Hartford and Erie Company by that name shall and may have, use, exercise and enjoy all the rights, privileges and powers heretofore granted to said Hartford, Providence and Fishkill Company, and be subject to all the duties and liabilities imposed upon the same by its charter and the general laws of the state. On these facts, the Supreme Court of the United States say: " The Hartford, Providence and Fishkill Railroad Company was, without question, so far as it owned and operated a railroad within the state of Rhode Island, a corporation in and of that state; and the Boston, Hartford and Erie Railroad Company became its legal successor in that state, as owner of its property, and exercising its franchises therein, and became, therefore, in its respect to its railroad in Rhode Island, a corporation in and of that state."

In that case, Rhode Island ratified a sale made under a Connecticut charter, and that act made a foreign a domestic corporation in the judgment of that court. In this case before us now, Georgia authorized the sale of her created railroad company to any corporation whatever, and thereby made that corporation, purchasing by her authority, equally a domestic corporation. The only conceivable distinction between the cases is that Rhode Island recognized the foreign corporation by name, while Georgia adopted any corporation who should buy, and thus adopted the name as soon as the purchaser's name was known. And that name became known when, by the contract of purchase, the two "became merged and consolidated under the name of the East Tennessee, Virginia and Georgia Railroad Company, under its Tennessee charter and under the charter granted by the state of Georgia to the Cincinnati and Georgia Railroad Company." Mere omission to call it by name does not alter the principle. 67 N.

Y., 371. The question is, whence does it get the Georgia franchise, the ownership of it? Unquestionably from this state, so far as her territory is affected. The permission to buy her offspring, which lives and can live only on her soil, is to breathe into the purchaser the life she gave that offspring, and let it live on the same soil. It is an original and direct grant by the legislature to the appointee of the Cincinnati and Georgia Railroad Company, and that appointee or purchaser, as soon as made, becomes *eo instanti* the offspring of the legislative will of the state. Mor. on Corps., 536 to 539 and citations; 65 Penn. St. R., 205.

It cannot be construed into a mere license to the East Tennessee, Virginia and Georgia road to run through this state. That is a permission merely to carry out a power already potential, and only needing enabling power to accomplish the end sought. Mor. on Corps., 525. This permission is a mere license, revokable at will by the state. Whether a mere license or a re-incorporation, depends on the construction of the law itself. Mor. on Corps., 525.

This is no license to the East Tennessee, Virginia and Georgia Company to use its franchise or any of its powers already granted in Georgia; but it is a right to buy the charter and all the franchises of a Georgia road. In other words, the charter of that Georgia company gives it power to buy this East Tennessee, Virginia and Georgia Company or sell itself to that company; to sell its entire charter by which alone it has life, and when it does sell, it dies, but another entity immediately lives in its place, and living in its stead, becoming itself under the charter granted to the being it bought, it is immediately, by the charter which it bought, a domestic Georgia corporation, having all the powers and subject to all the liabilities of that charter—that contract between itself and the state made by its purchase of the charter or contract of its predecessor,—and it is not revokable otherwise than the charter or contract thus made by the purchase between itself and the state. It is not by implication or inference at all that the

new corporation steps into the shoes of the old one. It is by the direct, clear and unmistakable grant of the power to buy a charter or contract of the state, and make a contract irrevocable and binding on it and the state, inviolable under provisions alike of the state and the United States constitutions.

This distinction seems to harmonize any conflict of authorities on the subject. 12 Wallace, 65, 82, 104 U. S. R., 5. On the subject of a grant which makes the grantee a corporation of the state granting, see 1 Black, 287; 13 Wall., 270; 96 U. S., 450; 107 U. S., 584; 109 U. S., 104; 32 Grattan, 399; 1 W. Va., 308; 3 Id., 319.

The truth is to be ascertained whether the state intended merely to license a foreigner to exercise franchises and buy a charter she granted to another, without assuming all the liabilities which the charter it bought required, or did she intend it to be a domestic corporation and under all the obligations of corporation citizenship? It is a question of intention; and it cannot be that she meant to make any such contract, with but one side to it, with anybody, natural or artificial, that might by the charter she had granted. It must be that she intended, and expressed the intention in plain words, to substitute the purchaser for the entity she allowed to be purchased, and to make the purchaser subject to her control in her own borders as fully as the seller of the charter had been before its sale. The purchaser became, to use the strong language of itself, used in the contract with the seller, "merged and consolidated" with the seller, absorbing thereby its life and drawing all its breath into its own lungs. It is a question of life, not of names. The seller lives only in the buyer; otherwise it is dead. Georgia did not intend to kill it, but make it a competitor with other lines to the sea, and to live, move and act on her soil under her own control as one of her domestics at home. 60 Ga., 274; 108 U. S., 436. Therefore, being a domestic corporation, the case is not removable by her petition.

v 74-41

4. As regards the other trust corporation of New York, no several decree could be made in regard to it independently of the East Tennessee, Virginia and Georgia Company; and therefore that corporation cannot remove the case.

Our conclusion is that the judge below erred, and the judgment of removal of the case to the circuit court of the United States is reversed.

I desire to express my obligations to Mr. King, of counsel for the plaintiff in error, for the able and exhaustive argument and very complete brief he made in this cause.

Judgment reversed.*