ROBERT COOK v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Reorganization by foreclosure purchasers—Liability for debt.*

Act 96 of 1859 permits the purchasers on a foreclosure sale of the track and appurtenances of a railway company to exercise the charter powers of the corporation on certain conditions, and frees them from liability for any debts embraced in the foreclosure.

A statute giving clear title to foreclosure purchasers does no injustice to general creditors.

A common law action for the debt of a railway corporation cannot be maintained against those who have obtained control of its franchises by a purchase of its track and appurtenances on foreclosure of a mortgage securing other indebtedness.

Error to Superior Court of Detroit. Submitted April 14. Decided April 21.

Assumpsit.    Plaintiff brings error.

*Alfred Russell* for plaintiff in error.    A corporation cannot without specific authority, mortgage an essentially corporate franchise, *Joy v. Plank Road Co.* 11 Mich. 155; *Meyer v. Johnston* 53 Ala. 237; and if the franchise is mortgaged, the purchasers become subject to the corporate liabilities, *Eldridge v. Smith* 34 Vt. 484.

*George Jerome* and *G. V. N. Lothrop* for defendant in error.    The franchise *to be* a corporation cannot be mortgaged without express authority from the Legislature, though the franchise *to build, own and operate* a railroad may be mortgaged under a general power.    Curtis, J. in *Hall v. Sullivan R. R. Co.* (1857) U. S. Circ. Ct. Dist. N. H., 21 Law Reporter 148: 2 Redf. Am. Ry. Cas. 621.

Campbell, J.    Plaintiff sued defendant on a debt due him from the Detroit & Milwaukee Railroad Company, and based his claim of recovery on the ground that the defendant company is in law the same corporation as his debtor, and bound to pay all its debts.    The debt consists of a judgment rendered February 26, 1875, for $5000.

On the fourth day of September, 1878, Samuel Barker and six other persons purchased the franchises and property of the Detroit & Milwaukee Railroad Company, so far as the same were mortgaged by certain mortgages executed in 1855, 1856, 1860 and 1863, by the Detroit & Milwaukee Railway Company and the Detroit & Milwaukee Railroad Company; the purchase being made on foreclosure proceedings in which a decree of sale was made by the circuit court for the county of Wayne. The Detroit & Milwaukee Railroad Company was a reorganization on a former foreclosure sale under a similar mortgage against the Detroit & Milwaukee Railway Company.

After their purchase and on the 26th day of October, 1878, these purchasers executed a statutory declaration in

accordance with the statute of 1859 (Comp. L. § 2373), whereby they declared their purpose of continuing to perform the duties and enjoying the franchises and immunities of the said railway corporation, and that they had provided the means for continuing and performing the duties and enjoying the franchises and immunities, and had provided suitable equipments for running and operating the road, and performing the duties incumbent on said corporation, and that the name by which they desired the said corporation to be called is the Detroit, Grand Haven & Milwaukee Railway Company.    It was further declared that the purchasers had transferred to said corporation its railway track and appurtenances, and all the equipments necessary to run the same and perform its duties.    This declaration was duly filed with the Secretary of State, and notice given to the Attorney General as required by law.

This conveyance was dated on the same day, and covered all the property and franchises.

The court below held that the corporation thus invested with these rights and franchises was not responsible for the debts of the Detroit & Milwaukee Railroad Company existing before the foreclosure.

It is claimed by plaintiff that by the method adopted by the purchasers to complete their organization, they continued the original corporation in force with all its former obligations.

The statute of 1859, entitled "An act in relation to mortgages against,--preferred stock in--and the delivery of goods by railway companies" (Laws 1859, p. 252) was passed to provide for the preservation under foreclosures of railway mortgages of the franchises of the mortgaging corporations. Until this law was passed there was no positive statute providing directly how mortgage sales should be made effective.    Mortgages had been authorized of railroads, which necessarily involved the rights which could alone make them of any value, but the interests of purchasers were left to be worked out by implication, and whether

perfect or not, would necessarily give rise to some disputes as to their precise quality and extent. This statute provides that if the railway track and its appurtenances of any railway corporation are sold on foreclosure, the purchasers, if they provide suitable equipments for running the road and performing the duties incumbent on it by law, and transfer to it again its track and appurtenances and necessary equipments, and make the declaration therein provided (which is in substance like the one made in this case), may issue and hold new stock in the corporation to such an amount and of such denomination as they shall deem proper, but not more than the value of the corporate property, unless additional stock is subscribed by parties able to pay for it. Provision is then made for the cancellation of the old stock and the election of officers by the new holders, and the continuance of all the former charter rights and powers. But it was further declared that the corporation should not be liable for any debts except those subsequently contracted by it, saving however all prior mortgages and liens, and leaving all property not included in the foreclosure sale liable for existing debts.

It is impossible to read this statute without seeing that the obvious purpose is to put the railway and its appurtenances sold under mortgage under the entire control of the new stockholders and their representatives, freed from all debts not secured by lien or mortgage, under the same conditions and with the same rights as if they had been the original stockholders of a road which was not burdened with debt. The law commits no injustice to general creditors by giving to purchasers a clear title to the property which they have purchased and paid for. If property were sold to a creditor under execution, it would be absurd to allow another creditor to levy on it and sell it as if it had never been sold. A mortgage would be of no value whatever if its foreclosure did not carry a title free from all claims that were not specific liens of older date on the property cov-

ered.    There is certainly no equity in giving unsecured debts a perpetual priority over those which are secured; and the statute of 1859 not only does not favor any such implication, but expressly declares the purchasers of the mortgaged premises, and the organization to which it is transferred, shall not be liable to old debts.    If there is such a liability it can only be raised by holding that the statute under which the arrangement is made which assures the transfer of the corporate rights cannot prescribe the terms of such holding so as to produce such a result.

It would seem much more natural to hold that the new arrangement failed altogether, for it is impossible with any reason to declare that the whole conditions should not stand or fall together.    The statute certainly contains no provision for any continued corporate dealing with the road under foreclosure except as an unencumbered property aside from prior liens.    If the defendant in this case can be recognized as subject to suit under its present corporate name at all, it must be on the statutory terms.

The only direct purpose for which the Detroit & Milwaukee Railway Company was given any franchises at all was that a railway might be maintained from Detroit to Grand Haven.    The company could not have complied with its corporate duties except in the management of that road.    The road and such franchises as were within the legislative design were connected.    The company could not have sold the road and its appurtenances and then gone into some other business or built another road.    And a sale to a purchaser who could not exercise the corporate privileges could have been of no use. When the road was authorized to mortgage its property and franchises the mortgage was meant to be effectual, and it could only be made so by assuring to the purchaser in some way the use of the franchises.    Undoubtedly a corporation may own property and assets which it can deal with as any private owner could, and which

are entirely independent of the ownership and management of its corporate business. It may have money in possession or due to it, and it may have other means acquired in payment of debts or otherwise, which are not intended to be used as a part of its road or appurtenances. But such property is incidental and needs no franchise to manage it. If the corporate existence remains after all of the property is disposed of which it was the entire purpose of the corporation existence to manage, it is the mere shadow of a name without any valuable significance. If the franchises pass with the mortgaged property, as they were meant to, all that is vital is thus transferred; and there is neither injustice nor incongruity in holding that the Legislature may treat the substance instead of the shadow as representing the corporate body. In the absence of legislation there might be some awkwardness in giving a precise legal definition to the new arrangement, but there could be none concerning its substantial rights. There could be no diminution of the privileges mortgaged without impairing the value of the mortgage itself as a legal security.

There would be manifest injustice in giving to the mortgagees property not covered by their contract, and this the statute has expressly exempted. The property not mortgaged is left subject to old obligations. No statutory method has been pointed out for dealing with such assets, if there are any. It is not necessary for us now to consider this. The statute has very explicitly declared that it cannot be done by treating the reorganized company as the immediate debtor of former creditors. It does not appear that any property is in hand which was not purchased on the foreclosure. If the company is in possession of any, the trust cannot be worked out by an action in common law form on the debt.

There was no error in so holding. The judgment must be affirmed with costs.

The other Justices concurred.