Filed September 21, 1894.

———————◆———————

No. 1,038.

THE CHICAGO AND ERIE RAILROAD COMPANY *v.* TOWLE.

CONTRACT.—*Railroad.*—*Sale Under Foreclosure of Mortgage.*—*Liability of Purchaser.*—Where a decree foreclosing a railroad mortgage provides that any purchaser may, before a deed is executed to him, abandon or disclaim a contract executed by the mortgaging company subsequent to the mortgage by giving written notice thereof to the commissioner making the sale, a compliance with the provision by the purchaser, and the execution of a deed making the foreclosure proceedings a part thereof by reference, carries the property to the purchaser free from any liability under the contract, unless such contract be subsequently accepted and ratified.

SAME.—*Acceptance and Ratification.*—Where, in such case, the contract is between the mortgaging company and manufacturers and provides for use of a private track leading to the factories, in consideration for which a greatly reduced freight rate is made to the latter, between certain points, the use of the track by the purchasing company in common with other railroad companies, in delivering freight, but without claiming any right thereto under the contract, or assuming any special contract thereof, but on the contrary at all times demanding the current freight rate, which is largely in excess of the contract rate, does not amount to such an acceptance of the contract as binds it to the rate therein fixed.

From the Porter Circuit Court.

*O. Gresham, N. L. Agnew, D. E. Kelly* and *L. O. Bailey,* for appellant.

*W. S. Coy,* for appellee.

DAVIS, C. J.—This suit was begun in the Lake Cir-

The Chicago and Erie Railroad Company *v.* Towle.

cuit Court by appellee to replevy a car load of lumber from the appellant. The venue of the cause was afterwards changed to the Porter Circuit Court.

Appellant defended on the ground that the lumber was held for the nonpayment of freight charges made for transporting the same from Chicago, in the State of Illinois, to Hammond, in the State of Indiana.

The regular rate fixed by appellant and other railroad companies, as shown by the record, between the points named, was and is under the published rates, pursuant to the interstate commerce act, $6.90, or in lesser quantities than car load lots, two cents per hundred. Appellee tendered in payment of freight charges for transporting the car in question $3, claiming that was all he should be required to pay under the terms of the agreement hereinafter mentioned.

On trial by the court appellee recovered judgment. Many questions have been discussed, but in the view we take of the case the decision of one or two propositions will determine the entire controversy. There is no conflict in the evidence. The principal question is as to the rights of the respective parties in this action on the undisputed facts.

In the years 1881 and 1885 the Chicago and Atlantic Railroad Company executed a mortgage on all its property and franchises in the States of Illinois, Indiana and Ohio, to secure the payment of bonds amounting in the aggregate to ten million dollars. In February and March, 1886, suit was brought in the Circuit Court of the United States, in said States, by the trustees, in said mortgages, for the purpose of foreclosing said mortgages. On the 15th of February, 1887, the appellee owned what was known as the Distillery track, in the city of Hammond, which then connected with the track of said railroad, and was about fifteen hundred feet in length. The Chi-

cago Steel Manufacturing Company had railroad tracks upon its own grounds, but such tracks were not connected with the distillery track of appellee, or with the track of said railroad. The Louisville, New Albany and Chicago Railroad Company, and also the Michigan Central Railroad Company then owned and operated separate tracks to said steel works. In this connection we set out in full the contract entered into between the parties therein named:

"This agreement, made this 15th day of February, A. D. 1887, between the Chicago Steel Manufacturing Company and Marcus M. Towle, of the city of Hammond, in the county of Lake, and State of Indiana; also James N. Young, of Washington Heights, county of Cook and State of Illinois, and Joseph T. Torrence, of the city of Chicago, and State of Illinois, parties of the first part, and the Chicago and Atlantic Railway Company, party of the second part, witnesseth:

"That, whereas, the parties of the first part, owning and controlling certain manufacturing industries in Hoffman's addition to the city of Hammond, having acquired rights to lay, maintain and operate railway tracks on and along River street, in said city, including the rights to extend the so-called M. M. Towle Distillery Track to the grounds of the Chicago Steel Manufacturing Company, as appears upon map hereto annexed.

"And whereas, said parties, or some of them, control or own the said distillery track to its present connection with the road of the second party, and have the right to grant the use thereof to others.

"Now, in consideration of the premises: The parties of the first part hereby grant to the second party the right to construct an extension of said distillery track from its present easterly terminus, about five hundred feet, to the westerly line of the grounds of the Chicago

Steel Manufacturing Company, there connecting with the tracks of said company upon its own grounds.

''The parties of the first part will furnish all necessary rights of way for such extension, and put the second party in immediate possession thereof for the purposes aforesaid.

''The parties of the first part further grant to the second party the right to use jointly and equally with said first parties the said distillery track, completed and extended as above, as well as any and all other tracks hereafter owned or controlled by them, or either of them, leading to or connecting with their works in said city of Hammond, free of charge or expense, and will at all times keep and maintain all such tracks in good order and condition for the passage of cars and engines thereover.

''The parties of the second part agree: That they will at once proceed to construct and complete, as soon as practicable, the extension of said distillery track to a connection with the tracks upon the grounds of the Chicago Steel Manufacturing Company, upon and along the right of way furnished as aforesaid and as shown upon the map attached.

''That they will in like manner lay upon the grounds of said Chicago Steel Company one thousand feet of single track, to be located by the said company and the engineer of the second part, with a view to accommodate the business of said company: *Provided, however*, that in the event said second party does not find the laying of said track profitable it may, after the expiration of two years from this date, take up and remove said track, unless said company shall elect to purchase the same at its actual cost. Such removal or purchase shall not impair or affect in any way the remaining provisions of this contract.

"That they will transfer cars for all and each of the first parties, and for any industries in which they or either of them may be interested, to and from their works at Hammond, situate upon the tracks aforesaid, at the following rates:

" '1. To and from Chicago at $3 per car of 20 gross tons, and no charge on empties when they have been loaded one way.

" '2. To and from the Chicago and Rock Island junction at Stony Island, and to and from the Illinois Central junction, near Stony Island, at $1.50 per car of 20 gross tons and no charge on empties, when loaded one way.' ·

"The party of the second part shall have the right to use all tracks of the Chicago Steel Manufacturing Company now or hereafter laid upon the grounds of said company, jointly and equally with said company and other railroads entering the same.

"No use of the distillery track and extension shall be granted to any railroad competing with the second party, except and only upon the condition that said second party shall be granted by such other railroad the like privilege of using its tracks now or hereafter connecting with or leading to the works of said first parties or any of them.

"That parties of the first part will procure such additional ordinances or grants from the city of Hammond as may be found necessary to enable the second party to lay down or use any of the railroad tracks contemplated in this contract.

"This agreement shall continue until the 15th day of February, in the year nineteen hundred and seven (1907), whereupon the party of the second part may take up and remove the tracks laid by it hereunder, unless the first

parties shall elect to purchase and shall pay for the same, the actual cost thereof.

"In witness whereof the parties have executed these presents the day and year first above written.

"CHICAGO STEEL MANUFACTURING COMPANY,
"(Signed)                    By JOSEPH T. TORRENCE,
                    "Vice-President and Gen'l Mgr.
"JAMES N. YOUNG.
            "MARCUS M. TOWLE,
            "JOSEPH T. TORRENCE,
            "CHICAGO AND ATLANTIC RAILWAY COMPANY.
                "By JAMES H. BENEDICT, President."

The extension therein mentioned, connecting the distillery track with the tracks of the steel works, was constructed, in pursuance of the provisions of the contract, and the parties in interest or their representatives kept and performed all the terms and conditions thereof until the first of September, 1890.

On the 24th of January, 1889, the circuit court of the United States entered a decree foreclosing said mortgages. It was expressly provided in the decree that any purchaser at the sale, pursuant to said decree, should be at liberty, before the deed was executed to him, to abandon or disclaim the agreement in question, with other agreements, by giving notice in writing of such abandonment or disclaimer to the master commissioner of said court. Caster and Thomas purchased all the mortgaged property at a sale made by the master commissioner pursuant to the terms of said decree.

On the 12th of August, 1890, and in compliance with the provisions of the decree, said Caster and Thomas duly notified the master, in writing, that they elected to abandon and disclaim the agreement under consideration. The master commissioner reported the sale and

also the disclaimer to the court, and his report of the sale and disclaimer was approved. It is admitted that a notice of such disclaimer was duly sent by the appellant, grantee of Caster and Thomas, to appellee on the first of September, 1890. In compliance with the terms of sale and orders of the court, the master commissioner, on the 13th of August, 1890, executed to said Caster and Thomas a deed of conveyance for said mortgaged property, in which the records and proceedings in said cause were made a part by reference thereto. Other deeds of assurance were also executed to the purchasers by the mortgagor and the trustees. Appellant acquired title to the property through a deed executed by Caster and Thomas on the 19th of August, 1890.

The evidence tends to prove that appellant, in common with other railroads centering at Hammond, has, since the first of September, 1890, continuously used the distillery and extension track in the delivery of such freight as has been consigned to establishments located thereon; that appellant has charged appellee the regular rate, two cents per hundred, or $6.90 per car, since September 1, 1890, which he has paid; that soon after the first of September, 1890, he went to see the officers of appellant to ascertain whether the company intended to repudiate the contract and was informed that they did not see how they could recognize the contract, and that he then said to them whatever he paid over the rate fixed in the contract he would expect to come back to him in the way of a rebate, and that he continued such consultations in his efforts to induce the company to recognize the contract until about the time the suit was commenced; that appellant hauls ten cars a day over the distillery and extension track to the Lake Side Nail Mill —the successor of the Chicago Steel Manufacturing Company; that none of the parties of the first part, men-

tioned in said agreement, have any interest in said nail mill; that appellant also hauls cars over said distillery and extension track to the Wolf Lake Distillery, and other industries, in which neither of the parties to the contract has any interest; that the fair rental value for the use of the distillery track and the right of way over the extension thereof, by appellant, based on the customary charge for traffic service, is five thousand dollars per year; that such use of said track by appellant has been without objection of appellee, and that the use thereof by the other railroad companies has been with his consent; that since the first of September, 1890, appellant has laid new ties on a part of said track, has filled up the right of way and has ballasted the track.

Conceding, without deciding, that the agreement hereinbefore set out constituted a valid and binding contract between the parties thereto, and waiving all questions arising on the pleadings, the question remains whether the appellant is shown by the evidence to be bound by said contract.

It is first insisted by counsel for appellee that under the deeds of conveyance executed by the master commissioner and the other parties to said foreclosure proceeding pursuant to the decree and sale, the appellant is required, notwithstanding the disclaimer of said purchasers, to carry out the terms of said contract.

In this view we do not concur. The deeds of conveyance must be construed in connection with the record and proceedings on which they were based. The deeds were executed in assurance of the title acquired by the purchaser when they complied with the terms of the sale. There was no other consideration for any of said deeds. Neither the rights nor liabilities of the purchasers were enlarged or restricted by the deeds. The record of the proceedings and the deeds when construed to-

gether show beyond question, in our opinion, that the purchasers at the sale made by the master commissioner did not acquire any rights or assume any liabilities growing out of or connected with said contract. The rights and liabilities of appellant are in this respect neither greater nor less than the rights and liabilities of Caster and Thomas.

It is next insisted that, notwithstanding the disclaimer, the continued use of the distillery and extension track by appellant since September 1, 1890, under the circumstances hereinbefore stated, constitutes an acceptance and ratification of the contract. Such use and possession, as we have seen, have not been exclusive. The evidence does not show that appellant asserted or exercised any claim of ownership to or over said distillery track. It is true it appears that since the appellant repudiated the agreement it has continuously used said track in delivering freight to appellee and others whose places of business are located thereon. The appellant never did at any time deliver any freight on the terms specified in the contract, but has, on the contrary, at all times contended that such freight was not, and would not be carried under the contract entered into by the Chicago and Atlantic Railway Company, and for which service it has charged and received the higher rate hereinbefore stated. Since the first of September, 1890, at which time appellant commenced to operate the property, it acquired of Caster and Thomas, the other railroads entering Hammond have, with the consent of appellee, used the distillery track and extension, for like purposes, with the exception that such companies have not delivered freight over that track to said nail mill, and perhaps, also, to said distillery hereinbefore mentioned, which they could reach over their own tracks. All the railroads have charged the same rate

for carrying such freight. No charge has been made by appellee against the other roads for trackage on account of such use. When appellant, on taking possession of the property acquired through Caster and Thomas, elected to repudiate the contract in question, it then had no right, so far as we can see, to use the appellee's track in the transaction of business with others.

Whether appellant is liable to appellee for the use of said distillery track, especially in the delivery of freight to others than appellee, we need not determine, as the question is not before us.

If, notwithstanding the disclaimer, the evidence disclosed that appellant took possession and assumed control of the distillery track by virtue of any rights it claimed to acquire under the sale, it may be conceded that such possession and control would amount to an acceptance or ratification of the contract, but the view we take of the evidence when considered in the most favorable light to appellee is that appellant did not take such possession, and assume such control, under any claim of right growing out of said sale, but that in common with other railroads it has used the distillery track in the delivery of such freight as has been consigned to appellee and others in that vicinity. This possession and use are not sufficient, under the circumstances, to authorize the court in holding that appellant was bound to haul the car in question for the rate specified in the contract entered into by the Chicago and Atlantic Railway Company.

Something has been said in argument concerning the repairs made to this track by appellant since September first, 1890, but in view of the fact that the contract expressly provides that appellee and his associates should, during the term of said agreement, at all times keep and maintain said track in good order and condition for the

use for which it was intended, we fail to see how such repairs so made by appellant can be considered as a circumstance tending to show that such use and possession of the track were under any claim of ownership or right growing out of the contract. The giving of the notice of the disclaimer, the continued refusal to carry freight for the price fixed in that contract, the negotiations between the parties, the use in common of the track with the other roads, the fact that appellee did not keep up the repairs when considered in connection with all the other circumstances, fail to show that appellant was bound by the terms and conditions of said contract. This is the only question we deem it necessary to decide.

The judgment of the court below is reversed, with instructions to grant a new trial and for further proceedings not inconsistent with this opinion.

Filed April 24, 1894; petition for a rehearing overruled Sept. 21, 1894.