## Cox v. The Baltimore and Ohio Southwestern Railroad Company.

[No. 22,512. Filed November 25, 1913.]

1. CORPORATIONS.—*Railroads.*—*Officers and Directors.*—*Election of President.*—Under §5187 Burns 1908, §3895 R. S. 1881, providing that directors of railroad companies shall be elected annually, and that there shall be a president elected from the directors, the president of a railroad company must be elected annually also. p. 502.

2. CORPORATIONS.—*Railroads.*—*Officers and Directors.*—*Contracts.*—As between the corporation and third persons, the directors as a board are the general agents of the corporation, but one board cannot bind another in the future, except where the rights of third persons have intervened. p. 502.

3. CONTRACTS.—*Validity.*—*Public Policy.*—*Contract for Employment.*—*Railroads.*—A contract by a railroad company with an injured employe, to give him employment so long as he should "live and prove a competent and worthy man," and, in case of discharge, to pay him a salary thereafter during life, unless discharged for neglect of duty or dissipation, is not void as against public policy, since it vested in the future management power to discontinue the service whenever, in its judgment, such employe should become incompetent and unworthy, thus sufficiently protecting the public interest. pp. 502, 503.

4. CONTRACTS.—*Contract for Employment.* — *Consideration.* — Forbearance to sue, and acceptance of money paid and of employment on the conditions named, constituted a sufficient consideration to support a contract between a railroad company and an injured employe, to pay his doctor bill and give him employment so long as he proved a competent and worthy man. p. 503.

5. CORPORATIONS.—*Railroads.*—*Ultra Vires Acts.*—A contract by a railroad company to give an injured employe employment so long as he proved a competent and worthy man, in consideration of his forbearing to sue the company, was not *ultra vires.* p. 505.

6. FRAUDS, STATUTE OF.—*Contracts Within Statute.*—*Contract of Employment.*—*Parol Contract in Settlement of Action Against Railroad Company.*—A contract in parol by a railroad company to give an injured employe employment so long as he proved a competent and worthy man in consideration of his forbearing to sue the company, was not within the statute of frauds. p. 505.

7. CORPORATIONS.—*Railroads.*—*Officers and Directors.*—*Ratification of Contracts.*—A contract, entered into by the president of a railroad company in its behalf with an injured employe, in

settlement of his claim against the company, even if unauthorized, was ratified by the act of the directors in making a payment to such employe under its terms.   p. 505.

8.   RAILROADS.—*Consolidation.—Effect.*—The act of consolidating railroad corporations involves an implied assumption by the new company of the obligations and liabilities of the old companies.   p. 506.

9.   PLEADING.—*Complaint.—Presumptions.—Priority of Rights.*— Where the complaint, in an action against a railroad company for breach of a contract for employment made by defendant's predecessor, alleged that the property of such predecessor was sold at a judicial sale, it must be presumed, in the absence of a contrary allegation, that the obligations on which the sale was made were superior to plaintiff's rights under the contract.   p. 506.

10.   JUDICIAL SALES.—*Title of Purchaser.—Discharge of Claims.*— In the absence of a contrary showing, it must be presumed that a judicial sale of property divests all claims, save such as are preserved by the decree.   p. 507.

11.   JUDICIAL SALES.—*Rights of Creditors.*—Creditors of a corporation whose property is sold at judicial sale ordinarily must look to the funds arising from the sale, or to the liability of the stockholders, for the payment of their claims, but a purchaser may be liable in equity on the contracts of its predecessor in so far as it adopts them and claims the profits arising therefrom.   p. 508.

12.   JUDICIAL SALES.—*Rights of Purchaser.—Rights of Contract Creditors.—Notice.*—The purchaser of property at a judicial sale was not bound to take notice of a simple contract in parol made by the former owner, and it was immaterial that the other party to the contract had no notice of the proceedings and sale. p. 508.

13.   MASTER AND SERVANT.—*Employment.—Adoption of Contract.*— The mere employment by a railroad company, purchasing property of another railroad company at a judicial sale, of a common laborer who was employed by the former company under a contract for life employment, would not be for the benefit of the purchasing company so as to operate as the adoption by it of the laborer's contract with the original company.   p. 508.

14.   PLEADING.—*Complaint.—Allegations.—Writings Relied On.*— Where plaintiff, in an action for breach of a contract of employment entered into by defendant's predecessor, relies upon a deed executed by such predecessor to the defendant to show the assumption of the contract by defendant, such deed must be made a part of the complaint, or attached as an exhibit.   p. 508.

15.   FRAUDS, STATUTE OF.—*Parol Contract.—Assumption of Contract.*—The parol agreement of a corporation, on purchasing the

property of another company, to assume a contract executed by the latter to employ an injured servant, which it was not otherwise bound to assume, is within the statute of frauds, subd. 2, §7462 Burns 1908, §4904 R. S. 1881, and is invalid. p. 509.

16. NOVATION.—*Elements.*—To constitute novation, there must be a valid obligation to be displaced, the consent of all the parties to the substitution, a new and sufficient consideration moving to the promisor, the extinction of the old debt or contract, and the creation of a new one. p. 509.

17. PLEADING.—*Complaint.*—*Admissions.*—The allegations of a complaint in an action on a contract entered into by defendant's predecessor, that on and after a certain date such predecessor was an insolvent corporation, is an admission that prior to that date it was in existence for some purposes, and is not an allegation of prior insolvency. p. 509.

18. MASTER AND SERVANT.—*Employment.*—*Rescission.*—*Executory Contract.*—An employer may at any time recede from an executory, severable contract for the services of a common laborer. p. 510.

From Martin Circuit Court; *James W. Ogdon,* Judge.

Action by Iven Cox against The Baltimore and Ohio Southwestern Railroad Company. From a judgment for defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Frank E. Gilkison,* for appellant.

*W. R. Gardner, C. K. Thorp, C. G. Gardner* and *F. Gwin,* for appellee.

MYERS, J.—The error assigned in this cause is in sustaining a demurrer to appellant's complaint in one paragraph, for want of facts sufficient to constitute a cause of action. The material allegations of the complaint, quoting it in all material particulars, are, that on or about October 14, 1882, the Ohio and Mississippi Railway Company was a railroad corporation, doing a general railroad business in the State of Indiana, and for that purpose owning and operating a line of railroad extending from Cincinnati, in the state of Ohio, across the states of Indiana and Illinois to East St.

Louis, in the state of Illinois, which railroad corporation had offices and agencies in Martin County, Indiana. That on said date and prior thereto this plaintiff was in the employment of said railway company as a section hand, and while so employed, on the date aforesaid, near the city of Washington, Daviess County, Indiana, he was by said railway company seriously and permanently injured in his arms, shoulders, back and elsewhere about his body, as a result of its carelessness and negligence. That at said time plaintiff was a man aged about twenty-two years. That thereafter, in January, 1883, this plaintiff was preparing to bring a lawsuit against said railway company to recover damages for the said injuries received by him as aforesaid. That at said time one Peabody was president of said Ohio and Mississippi Railway Company, and as such official had his offices at the city of Cincinnati, Ohio. That at said time, in January, 1883, the Ohio and Mississippi Railway Company, acting by and through said Peabody, then and there acting as president of said railway company, made the following proposition and offer to this plaintiff for the purpose of settling his claim, to wit: "If you will forbear suing the Ohio and Mississippi Railway Company for injuring you, we will pay the doctor's bill, and for your lost time, the sum of one hundred thirty dollars, and we will in addition give you employment on this road, it making no difference who may own it, as long as you live, and prove a competent and worthy man, and if at any time you are thrown out of employment, you will receive your salary as long as you live thereafter, unless your discharge is for neglect of duty, or dissipation. We will not ask you to do hard or laborious work, but will promote you from one position to another, subject to the rules of the company." That plaintiff then and there accepted said proposition and offer in full settlement of his claim for injuries received as aforesaid, and the railway company, by and through said Peabody, its president, acting for it in that behalf, then and there paid plain-

tiff the sum of $130 to pay his doctor bill and for lost time as agreed upon, and in conformance with said agreement gave plaintiff employment upon said railroad so operated by said company, and plaintiff did forbear bringing any action against said company for damages caused by his said injuries, and has continuously since said date, in all things, performed his part of said contract and compromise agreement.    That on January 9, 1884, he was promoted to the position of track foreman in conformance with said agreement, which position he held by virtue of said compromise agreement aforesaid continuously until his discharge as hereinafter set forth; that in the year 1893, the said Ohio and Mississippi Railway Company was consolidated with other railway companies under the name of the Baltimore and Ohio Southwestern Railway Company, and thereafter said last named company owned and operated said railroad aforementioned from said date until about July 28, 1899. That it had offices and agencies in Martin County, Indiana.    That the said latter company by virtue of law became and was bound to perform the said contract of the former company with this plaintiff; that the former company did then ratify, assume and adopt said contract as its own, and did in all things faithfully perform the same.    That plaintiff in all other things faithfully performed his part of said contract with said Baltimore and Ohio Southwestern Railway Company.    And plaintiff avers that on July 28, 1899, a special master commissioner appointed by the United States Circuit Court, in a certain action in which the Farmers' Loan and Trust Company was plaintiff, and the Baltimore and Ohio Southwestern Railway Company was defendant, by order of said court made in said cause, sold that portion of said railroad lying and being in the State of Indiana to the Cincinnati, Louisville and Vincennes Railway Company, and that part of said railroad lying and being in the state of Illinois to the St. Louis, Springfield and Vincennes Railway Company.    That this plaintiff was not a party to said action,

and had no notice or knowledge thereof. That on July 29, 1899, the St. Louis, Springfield and Vincennes Railway Company conveyed that part of said railroad lying and being in the state of Illinois to the Cincinnati, Louisville and Vincennes Railway Company. That on July 31, 1899, the Cincinnati, Louisville and Vincennes Railway Company was consolidated with other railroad companies into The Baltimore and Ohio Southwestern Railroad Company. That on August 12, 1899, the Baltimore and Ohio Southwestern Railway Company, by quitclaim deed, and for a valuable consideration, conveyed to the defendant all of said railroad, franchise and equipment which had belonged to the Ohio and Mississippi Railway Company prior to its consolidation with the said Baltimore and Ohio Southwestern Railway Company, and also other lines of railroad belonging to the Baltimore and Ohio Southwestern Railway Company. That said quitclaim deed conveyed to defendant, the said The Baltimore and Ohio Southwestern Railroad Company, all contracts, rights and interests, claims, demands, choses in action, and causes of action of every kind, legal and equitable, belonging to the Baltimore and Ohio Southwestern Railway Company. That defendant, The Baltimore and Ohio Southwestern Railroad Company, accepted said deed, and caused the same to be recorded in the deed records of Martin County, Indiana, and it then and there became the owner of said railroad. That up to said time plaintiff was regularly employed as a track foreman upon said line of railroad. That defendant still owns and operates said railroad, and that it has offices and agencies in Martin County, Indiana. That said defendant, with full knowledge of plaintiff's contract with the Ohio and Mississippi Railway Company, and the Baltimore and Ohio Southwestern Railway Company, into which it merged by virtue of said consolidation aforesaid, assumed, recognized, confirmed, adopted and ratified said contract as its own, and by virtue thereof became and was bound to perform the same. That there-

after defendant attempted to discharge plaintiff, whereupon plaintiff demanded his rights under said contract, and defendant with full knowledge thereof, and because thereof and of said demand, withdrew its attempted discharge, and directed plaintiff to continue his labor for it, under said contract. That said defendant continued to employ plaintiff as a track foreman, and did in all things perform its part of said agreement from the date it became the owner of said railroad, until May 8, 1909, when it discharged plaintiff without cause, in violation of its contract aforesaid. That said Ohio and Mississippi Railway Company and the Baltimore and Ohio Southwestern Railway Company were both on May 9, 1909, and continuously since said date and still are, insolvent and inactive corporations, and have no longer any legal existence. That plaintiff at all times performed in good faith every part and consideration of his contract with defendant. That at the time of his wrongful discharge as aforesaid plaintiff demanded of defendant that it pay his wages in accordance with the terms of said agreement, but that said defendant has failed and refused to pay the same or any part thereof, and has wholly disregarded and broken said contract. That at the time of his wrongful discharge aforesaid, the plaintiff was receiving the sum of $55 per month for his services as track foreman for defendant under his contract aforesaid, and by the terms of said contract he was and is entitled to receive said sum continuously from said date so long as he may live. That by reason of the injuries received by him as aforesaid, plaintiff is so crippled and maimed that he is physically unable to perform manual labor, or to obtain any employment elsewhere. That because of the breach of the said contract by the defendant as aforesaid, plaintiff has been damaged in the sum of $15,000.

Five questions are presented by the parties on the sufficiency of the complaint: (a) whether the president of the railway company had the authority and power to make the

contract, (b) whether it is *ultra vires* the corporation, (c) whether, if there was power to make it, it is invalid as being in parol, (d) whether it is against public policy, and (e) whether under the allegation, if the contract was valid in its inception, it was assumed by and is binding on appellee. We consider the first four propositions in the inverse order of statement.

The statute provides that directors of railroad companies in this State shall be elected annually, and inferentially that a failure to elect may be a cause for dissolution. It also provides that there shall be a president elected from the directors. §5187 Burns 1908, §3895 R. S. 1881. The duties of officers except directors is to be prescribed by by-laws. §5189 Burns 1908, §3897 R. S. 1881. If directors must be elected annually and the president elected from the directors, it must be clear that the president must be elected annually, because one board cannot bind another board in the future, except where the rights of third persons have intervened. But the president must be a director, and he is therefore the executive officer of that body, and as between the corporation and third persons, the directors as a board are the general agents of the corporation, if not the corporation itself. *Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391, 49 Am. Rep. 770.

Under the allegations of the complaint, appellant was injured while in the service of a railroad company. He claimed a right of action against it for the injuries. Laying aside for the present the allegation that the contract was made by the company acting by and through its president, then and there acting for the company, it is urged by appellee that it is against public policy, as tending to impair the efficiency of public service corporations, to make contracts for future service, and that as directors must be elected annually, they cannot bind the company by contracts for services extending beyond the year of

their term of office. It will be noted that the alleged employment was to run so long as appellant should "live and prove a competent and worthy man," and in case of discharge he should receive his salary thereafter during life, unless "discharged for neglect of duty, or dissipation." The conditions sufficiently protect the public and vest the power in the future management to discontinue the service whenever, in its judgment, appellant should become "incompetent and unworthy," and if discharged for neglect of duty or dissipation, his salary should cease. Forbearance to sue, and accepting the money paid, and future employment on the conditions named, were a sufficient consideration for the agreement, and could in no wise affect the duty of appellee with respect to the service it owed to the public because the right to preserve such protection is reserved, and the company was the judge as to whether it should in its own interest make such contract, as a purely business matter. We are cited the case of *Carney* v. *New York Life Ins. Co.* (1900), 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. 347.

The case throws little light on the controversy here by reason of the fact that the employment was an unqualified one of a position for life. The contract was held unreasonable, and that the by-laws counted on as giving the president and actuary power to "appoint, remove, and fix the compensation of each and every person except agents employed by the company," should not receive a construction which would tie the hands of future trustees, who were required to be elected every four years, and that the question of reasonableness was one of law for the court, and not for the jury. In the notes to that case, in 49 L. R. A., is cited *Brighton* v. *Lake Shore, etc., R. Co.* (1894), 103 Mich. 420, 61 N. W. 550, where it was held that it was proper for a jury to find that two division superintendents who represented the company had authority to make an agreement in settlement of a claim for personal injuries at a specified salary for life or during

his "ability and disposition" to perform the duties of his position, and in *Maxson* v. *Michigan, etc., R. Co.* (1898), 117 Mich. 218, 75 N. W. 459, it was stated that the ground of the former decision was that authority for, and ratification of the agreement was shown by the fact that a sum of money was also paid to the employe as part of the settlement, which brings this case within the rule of that case, though in the Maxson case it was held that a division superintendent had no implied power to make such contract, and that it was incumbent on one so claiming to show the authority or ratification. In *Laird* v. *Michigan Lubricator Co.* (1908), 153 Mich. 52, 116 N. W. 534, 17 L. R. A. (N. S.) 177, it was held that a secretary-treasurer of a private corporation could not contract for services beyond the term of his own office, and that of the directors. In *Nephew* v. *Michigan, etc., R. Co.* (1901), 128 Mich. 599, 87 N. W. 753, it was held that the general attorney of a railroad company, whose sole duty was to furnish legal advice, and settle suits, had no authority to enter into a life contract with an employe who had been injured in the service, in settlement of his claim for the injury. But in *Usher* v. *New York, etc., R. Co.* (1902), 76 App. Div. (N. Y.) 422, 78 N. Y. Supp. 508, affirmed in (1904) 179 N. Y. 544, 71 N. E. 1141, it was held that a contract between a superintendent of a street railway company, in behalf of the company for life employment, in consideration of a release of his claim, was upheld, since the company retained the release, and thereby accepted the benefit of the contract. The case of *Carney* v. *New York Life Ins. Co., supra,* was distinguished, because the contract in that case was wholly executory, while in the Usher case it was the adjustment of a claim for damages wholly executed on the part of the employe, as is the case at bar. In none of the cases which we have cited, or been able to find, has it been suggested that such a conditional and qualified employment as we have here was invalid, as against public policy. On the other hand, it has been held that an agreement by a servant to release the

master from liability for damages is a sufficient considera-
tion to support a promise to give him "steady and perma-
nent employment," and is not lacking in mutuality. *Penn-
sylvania Co.* v. *Dolan* (1892), 6 Ind. App. 109, 32 N. E. 802,
51 Am. St. 289; *Hobbs* v. *Brush, etc., Co.* (1889), 75 Mich.
550, 42 N. W. 965. The reasoning in those cases, as to the
validity of the contract, is applicable here. The provision
for "steady employment" is not different from the condi-
tional and qualified contract here; in each case the employ-
ment is conditioned on ability to properly perform it, and
that is as far as the public interest or public policy extends.
It was a contract in the line of the recognized business which
appellee was organized to perform, and was not void as
against public policy. Neither was it *ultra vires* the
5. corporation. Under the allegations of the complaint
the employment was in the line of the powers of its
incorporation. It was fully performed by the primary com-
pany, and it received the benefit of the agreement, and appel-
lee fully performed. If that company were here, it would
not be heard to say that the contract was *ultra vires*. *Bed-
ford, etc., R. Co.* v. *McDonald* (1897), 17 Ind. App. 492, 46
N. E. 1022, 60 Am. St. 172, and cases cited. Neither was
the contract within the statute of frauds, so far as
6. the primary company was concerned. *Pennsylvania
Co.* v. *Dolan, supra,* and cases there cited.

As to proposition (a) it is unnecessary to go farther than
to call attention to the fact that the contract was partly exe-
cuted, and partly executory, and that whatever may
7. have been the authority, or lack of authority, in the
president, to make the contract, the allegations show
that it was ratified by the directors in the payment which
was made. *American Quarries Co.* v. *Lay* (1906), 37 Ind.
App. 386, 73 N. E. 608.

It is alleged that the original, or Ohio and Mississippi
Company, was consolidated with other railways under the
name of the Baltimore and Ohio Southwestern Railway

Company, and the latter, "by virtue of law, became and was bound to perform the said contract" of the former company, and did "ratify, assume, and adopt said contract as its own, and did in all things faithfully perform the same," and appellant fully performed. It is settled in this State that the act of consolidation involves an implied assumption by the new company of the obligations and liabilities of the old companies. *Cleveland, etc., R. Co.* v. *Prewitt* (1893), 134 Ind. 557, 33 N. E. 367; *Cashman* v. *Brownlee* (1891), 128 Ind. 266, 27 N. E. 560; *Louisville, etc., R. Co.* v. *Boney* (1888), 117 Ind. 501, 20 N. E. 432, 3 L. R. A. 435.

The allegations of the complaint as to the assumption and ratification are probably no stronger than the implication of the law itself, but it then appears by the complaint that the railroad was sold July 28, 1899, under a decree of the United States Court, purchased by another company, which then consolidated with a third company to form the present appellee, and on July 29, 1899, the Baltimore and Ohio Southwestern Railway Company conveyed by quitclaim deed to appellee "all of said railroad, franchise and equipment which had formerly belonged to the Ohio and Mississippi Company * * * and all contracts, rights and interests, demands, choses in action and causes of action of every kind, legal and equitable, belonging to the Baltimore and Ohio Southwestern Railway Company." That appellee accepted the deed, and caused it to be recorded in Martin County, Indiana. "That defendant, with knowledge of plaintiff's contract with the Ohio and Mississippi Company, and Baltimore and Ohio Southwestern Railway Company, * * * assumed, recognized, confirmed, adopted and ratified said contract as its own," and thereafter employed him until May 8, 1909, when it discharged him "without cause." As all presumptions must be taken against the pleader, it must be presumed that the obligations on which the sale of the railroad was made were superior to

appellant's rights under the contract, and in the absence of averments to the contrary, or of some statute or agreement shown, it must be presumed that the sale divested all claims, save such as were preserved by the decree, and that the purchaser took the property discharged from the obligation of appellant's contract, if such obligation existed.    *Moyer* v. *Fort Wayne, etc., R. Co.* (1892), 132 Ind. 88, 31 N. E. 567; *Lake Erie, etc., R. Co.* v. *Griffin* (1884), 92 Ind. 487; *Chicago, etc., R. Co.* v. *Towle,* (1894), 10 Ind. App. 540, 37 N. E. 358; *Chesapeake, etc., R. Co.* v. *Griest* (1887), 85 Ky. 619, 4 S. W. 323; *Louisville, etc., R. Co.* v. *Orr* (1891), 91 Ky. 109, 15 S. W. 8; *Powell* v. *North Missouri R. Co.* (1867), 42 Mo. 63; *Hammond* v. *Port Royal, etc., R. Co.* (1880), 15 S. C. 10; *Vilas* v. *Page* (1887), 106 N. Y. 439, 13 N. E. 743; *Vatable* v. *New York, etc., R. Co.* (1884), 96 N. Y. 49; *Sullivan* v. *Portland, etc., R. Co.* (1877), 94 U. S. 806, 24 L. Ed. 324; *Pennsylvania Transportation Co.'s Appeal* (1882), 101 Pa. St. 576; *Plank Road Co.* v. *Griffin* (1868), 57 Pa. St. 417; *Gilman* v. *Sheboygan, etc., R. Co.* (1875), 37 Wis. 317; *North Hudson R. Co.* v. *Booraem* (1877), 28 N. J. Eq. 450; *Cook* v. *Detroit, etc., R. Co.* (1880), 43 Mich. 349, 5 N. W. 390; *Cooper* v. *Corbin* (1883), 105 Ill. 224; *City of Menasha* v. *Milwaukee, etc., R. Co.* (1881), 52 Wis. 414, 9 N. W. 396; *Hoard* v. *Chesapeake, etc., R. Co.* (1887), 123 U. S. 222, 8 Sup. Ct. 74, 31 L. Ed. 130; *People, ex rel.* v. *Louisville, etc., R. Co.* (1887), 120 Ill. 48, 10 N. E. 657; *Houston, etc., R. Co.* v. *Shirley* (1880), 54 Tex. 125; *Branson* v. *Oregonian R. Co.* (1884), 11 Ore. 161, 2 Pac. 86; *Hunter* v. *Burlington, etc., R. Co.* (1889), 76 Iowa 490, 41 N. W. 305; *Gulf, etc., R. Co.* v. *Newell* (1889), 73 Tex. 334, 11 S. W. 342, 15 Am. Rep. 788; *Des Moines, etc., R. Co.* v. *Wabash, etc., R. Co.* (1889), 135 U. S. 576, 10 Sup. Ct. 753, 34 L. Ed. 243.

The creditor or claimant must look to the funds arising from the sale or to the liability of stockholders.    *Chicago, etc., R. Co.* v. *Howard* (1868), 74 U. S. 392, 19 L. Ed. 117.

The purchaser may be liable in equity, upon contracts of its predecessor in so far as it adopts them and claims the profit for itself. *Lake Erie, etc., R. Co.* v. *Griffin, supra; Jacksonville, etc., R. Co.* v. *Louisville, etc., R. Co.* (1894), 150 Ill. 480, 37 N. E. 924.

Here we have a simple contract of which the purchaser at the sale was not bound to take notice so that the allegation of want of notice to appellant of the foreclosure proceedings is of no materiality.

The remaining question is, as to what is the force and effect of the allegation that appellee received and accepted a quitclaim deed from the Baltimore and Ohio Southwestern Railway Company of "all contracts, rights and interests, claims, demands, choses in action and causes of action of every kind, legal or equitable, belonging to" said company, and that "with full knowledge of plaintiff's contract * * * assumed, recognized, confirmed, adopted and ratified said contract as its own and by virtue thereof became and was bound to perform the same." That appellee "thereafter attempted to discharge plaintiff whereupon he demanded his rights under said contract, and defendant with full knowledge thereof, and because thereof, and of said demand, withdrew its attempted discharge and directed plaintiff to continue his labor for it, under said contract," and thereafter discharged him "without cause." This is an action at law for breach of the contract. It could only be the contract of appellee, as we have seen, by reason of its assumption or reservation in the decree of sale, which is not alleged, or its assumption by virtue of the conveyance, and the conveyance is not set out. This might not be necessary if it were an equitable proceeding, based on adoption of the contract for its benefit, but it is manifest that there was no prior liability, and it would be difficult to see how the mere employment of a day laborer could be for appellee's benefit as the adoption of the contract. If it is based on assumption by deed, the latter would have to

be a part of the complaint, or an exhibit, so we are forced to the conclusion that it is not based on the deed, but upon the parol contract of assumption. If that assumption or adoption could be by parol, the complaint states a cause of action, if a consideration appears, or novation has arisen under the allegations of the complaint. If it was an agreement to assume the obligation of the prior companies, it is within the statute of frauds (subd. 2, §7462 Burns 1908, §4904 R. S. 1881), and is invalid. To constitute a novation, there must be a valid obligation to be displaced, the consent of all parties to the substitution, a new and sufficient consideration moving to the promisor, the extinction of the old debt or contract, and the creation of a new one. *McClellan* v. *Robe* (1884), 93 Ind. 298; *Sinex* v. *Toledo, etc., R. Co.* (1866), 27 Ind. 365; *Morrison* v. *Kendall* (1893), 6 Ind. App. 212, 33 N. E. 370.

It is not shown that there was any agreement or consent of all the parties to the substitution, or any consideration for it, or that the old contract was abrogated, or the creation of a new contract. In fact the complaint counts on the old contract as subsisting. It is alleged that both of the former companies on and after May 8, 1909, were insolvent, and inactive corporations, and have no longer any legal existence. It is an admission that prior to that date they were in existence for some purposes, and is not an allegation of prior insolvency, and even if insolvent and inactive, they did have a legal existence for the purpose of being wound up at least, and distributing their assets, but whether insolvent or out of existence is immaterial, and however these allegations are to be taken, there is no allegation of any consideration, express or implied, or agreement between the interested parties to substitute appellee as a contractor, or agreement by it to assume the obligations of the original contract. No special promise in writing is shown, and appellee can be obligated by no other, to carry out the original contract, and for the same reason there can be no

recovery for breach of the contract, because it is invalid as between appellant and appellee. Appellant has been paid for all that appellee received from him, his services, and even though his employment was continued by appellee, it was an executory, severable contract for services, and appellee could at any time recede from it. It could hardly be insisted that appellee could enforce specific performance. It was said in *Britain* v. *Rossiter* (1879), L. R., 11 Q. B. D. 123, "It seems to me impossible that a new contract can be implied from the doing of acts which were clearly done (here claimed to have been done), in performance of the first contract only, and to infer from them a fresh contract would be to draw an inference contrary to the fact. It is a proposition which cannot be disputed that no new contract can be implied from acts done under an express contract, which is still subsisting; all that can be said is, that no one can be charged upon the original contract because it is not in writing." See, also, *Snelling* v. *Huntingfield* (1834), 1 C. M. & R. *20, *24.

We are forced to the conclusion that the complaint is insufficient, and the judgment is affirmed.

Morris, J., concurs in the result.

NOTE.—Reported in 103 N. E. 337. See, also, under (1) 10 Cyc. 321; (2) 10 Cyc. 758; (3) 9 Cyc. 498; (4) 9 Cyc. 338; (5) 10 Cyc. 1146; (6) 20 Cyc. 203; (7) 10 Cyc. 913; (8) 33 Cyc. 434, 439; (9) 31 Cyc. 79, 86; (10) 24 Cyc. 62; (14) 31 Cyc. 556; (15) 20 Cyc. 160; (16) 29 Cyc. 1130; (17) 31 Cyc. 87; (18) 26 Cyc. 980. As to contracts for permanent employment, see 51 Am. St. 301. As to application of statute of frauds to agreements not to be performed within a year, see 138 Am. St. 590; 15 L. R. A. (N. S.) 321. As to the time for which contracts of employment may be made on behalf of corporation by its officers, directors and agents, see 49 L. R. A. 471; 17 L. R. A. (N. S.) 177. For presumption that a contract with a corporation is within the authority of its president, see 7 L. R. A. (N. S.) 376. As to the liability of a consolidated company for debts of its predecessor, see 23 L. R. A. 231. As to the validity of a release given in consideration of the reëmployment of the releasor by the releasee, see 4 Ann. Cas. 647. Reported and annotated in 50 L. R. A. (N. S.) 453.